**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MADELINE C. MILAD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 14 CV 4627** |
| **v.** | ) | |
| | ) | **Magistrate Judge Michael T. Mason** |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of the U.S. Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Madeline C. Milad seeks judicial review under 42 U.S.C. § 405(g) of a

final decision of Defendant Commissioner of the Social Security Administration (the

"Commissioner") denying her claim for Social Security Disability Insurance Benefits

("DIB") under Title II of the Social Security Act ("the Act").  *See* 42 U.S.C. §§ 416 and

423.  The parties have consented to the jurisdiction of a United States Magistrate Judge

pursuant to 28 U.S.C. § 636(c).  For the reasons that follow, Plaintiff's motion for

summary judgment is granted in part and the case is remanded to the Social Security

Administration for further proceedings consistent with this Opinion.  The

Commissioner's motion for summary judgment is denied.

## I.     BACKGROUND

### A.     Procedural History

On March 11, 2011, Plaintiff filed a Title II DIB application alleging a disability

onset date of March 10, 2011 due to a variety of physical impairments such as diabetes,

high cholesterol, high blood pressure, arthritis, obesity, muscle weakness, wrist pain,

and pain associated with a lower back spinal fusion.  (R. 209-222.)  Her initial claim was

denied on April 6, 2011 and again upon reconsideration on July 14, 2011.  (R. 98, 107.)

After both denials, Plaintiff filed a hearing request on July 21, 2011 pursuant to 20

C.F.R. § 404.929 *et seq.*  (R. 111.)  A hearing was scheduled on September 13, 2012

before an Administrative Law Judge ("ALJ").  (R. 27-78.)  Plaintiff appeared along with

her representative Ashley Rose and a Vocational Expert ("VE") was also present and

offered testimony.  (*Id.*)  On November 9, the ALJ issued an opinion denying plaintiff's

claim for benefits.  (R. 10-18.)  The Appeals Council denied review, (R. 1-3), and this

action followed.

### B.    Medical Evidence

#### 1.    Treating Physicians

Plaintiff has been a patient of the DuPage Medical Group since 2008.  (R. 1174.)

She is generally treated for her knee and back pains, allergies, hypertension, and

diabetes.  (R. 1154, 1162.)  Plaintiff had a knee arthroscopy in the left knee in

December 2008 and reported ongoing pain and discomfort.  (R. 1122, 1152.)

Plaintiff had spinal infusion surgery on April 19, 2010 at Adventist Hinsdale

Hospital with Dr. Ibrahim Kamal.  (R. 298, 899, 961.)  Postoperative evaluations

indicated that Plaintiff's surgery was met with complications and Plaintiff felt lethargic

and feverish after the procedure.  (R. 956.)  At discharge, Plaintiff was diagnosed with

diabetes, hypertension, migraines, obesity and lumbar stenosis.  (R. 311.)  Though

Plaintiff reported that her back pain was almost gone post-surgery, there was an

infection in the surgical area for which she sought treatment.  (R. 298, 899.)  On April

23, 2010, an irrigation procedure was performed on Plaintiff's lumbar spine incision

region due to the infection.  (R. 749.)  She was treated extensively for the wound from

May through September 2010 with homecare services from Adventist Health Care. (R. 557-715.) The records indicate that Plaintiff received continuous treatment for the wound throughout her home healthcare regimen and she showed improvement in subsequent evaluations. (R. 311, 314, 837, 860-899.) On August 11, 2010, she was discharged from home healthcare and indicated that she would return to work the following Monday. (R. 557.)

Plaintiff attended physical therapy sessions at Core Performance Physical Therapy from February 2010 through May 2010. (R. 718-58.) The physical therapist noted that she believed Plaintiff's rehabilitation potential to range from fair to good. (R. 729.) Plaintiff reported that her back pain ranged from zero to seven and a half on a ten-point scale and her right lower leg and foot pain ranged between two and a half to five on a ten-point scale. (R. 718.) Her physical therapy sessions involved core stabilization exercises, postural instruction, and treadmill/home walking program. (R. 749.) Her pain levels and improvement fluctuated throughout her physical therapy, and there were days on which Plaintiff could ambulate with no pain in her back and other days in which she experienced pain with all movement in her lumbar spine. (R. 729, 750.) In May of 2010, Plaintiff was discharged from her physical therapy sessions because she failed to attend. (R. 740.)

On January 18, 2011, Plaintiff complained of pain and discomfort to her left knee during a visit to DuPage Medical and an MRI was ordered after repeated x-rays showed no clear evidence of advancing osteoarthritis. (R. 1174.) Plaintiff was informed she was not a candidate for knee arthroscopy. (R. 1152.) On February 21, 2011, an MRI indicated degenerative changes in the tibia area. (R. 1162.) During a visit on June 28,

2011 to DuPage Medical, the physician conducted a physical exam which indicated Plaintiff had a good range of motion in the elbows, wrists, and cervical spine, and is able to fully extend her knees. (R. 1152.)

On August 17, 2011, Plaintiff had a right ring finger pulley release surgical procedure performed at Central DuPage Hospital. (R. 1023, 1144.) A follow-up evaluation indicated no complications and she was discharged the same day in stable condition. (R. 1013, 1142.)

In September 2011, an ultrasound was performed that indicated an abnormal gallbladder. (R. 1027.) She was admitted for abdominal pain and diagnosed with a gangrene gallbladder with biliary leak. (R. 987.) Surgery was performed with difficulty and a bile duct stent was installed. (R. 1002.) Postoperative evaluations indicated a normal bile duct and there was no persistent leak in December 2011. (R. 982.)

In March 20, 2012, an MRI from Central DuPage Hospital indicated a tear in the rotator cuff and Plaintiff elected surgical repair on March 28, 2012. (R. 1101.) Follow-up evaluations at DuPage revealed that her motion and pain improved post-surgery. (R. 1096.) Plaintiff attended physical therapy at Central DuPage from April 2012 through August 2012 for treatment after her rotator cuff surgery. (R. 1189-1275.) Throughout her 21 sessions at Central DuPage, Plaintiff's pain and mobility fluctuated. (*Id.*) Plaintiff generally met the goals of the sessions but continued to experience pain. It was noted in one session that she could not carry a cup of coffee. (R. 1200.) During her May 21, 2012 session, Plaintiff experienced less soreness in her shoulder, but on May 29, 2012, Plaintiff reported pain and stiffness. (R. 1218, 1223.) It was noted during her final physical therapy session in August that Plaintiff did not meet her goal of

an overall improvement in a sense of wellness of at least 90 percent due to her pain. (R. 1274.)

Plaintiff has been a patient with Dr. Jean Houlihan of DuPage Medical Group since July 16, 2012. (R. 1187-88.) Dr. Houlihan has treated Plaintiff for diabetes, obesity, and chronic neck and lower back pain due to the various surgical procedures that Plaintiff underwent. (*Id.*) Dr. Houlihan opined that Plaintiff's back pains have prevented her from being able to sit or stand for more than five minutes. (*Id.*) Her bilateral groin pain has caused insomnia, and the inability to sit, stand, or walk for long periods of time. (*Id.*) Plaintiff is unable to grasp objects because of her finger surgery. (*Id.*) Dr. Houlihan further opined that Plaintiff's left shoulder surgery has left her with a burning in her shoulder and a limited range of motion. (*Id.*) She cannot lift two pounds without discomfort. Furthermore, Dr. Houlihan stated that Plaintiff's knee surgery has prevented her from standing for long periods of time. (*Id.*)

## 2. Agency Evaluations

In July 2011, a disability examiner conducted an evaluation of the medical evidence at the reconsideration level and concluded that Plaintiff was not disabled. (R. 87-95.) The examiner found that Plaintiff had the severe impairments of osteoarthrosis, obesity, diabetes, and loss of visual acuity. (R. 91.) The examiner further concluded that Plaintiff's statements about the intensity, persistence, and functionally limiting effects of the symptoms were not substantiated by the objective medical evidence. (R. 92.) The examiner found Plaintiff partially credible and concluded that, although the medical evidence showed degenerative changes in the joints, Plaintiff was still capable of working. (*Id.*) Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds,

stand and walk for a total of two hours, and sit for about six hours in an eight-hour workday.  (R. 92-93.)  Plaintiff could climb ramps, stairs, ropes, ladders, scaffolds occasionally, as well as balance, stoop, kneel and crouch occasionally.  (R. 93.)

C.    **Claimant's Testimony**

Plaintiff appeared at the hearing before the ALJ and testified as follows. At the time of the hearing, Plaintiff was 59 years old.  (R. 34.)  She was 4'9" tall and weighed 203 pounds.  (*Id*.)  She is married and has three children.  (*Id*.)  She obtained her high school diploma in Egypt and had taken a few college level courses at Wright College. (R. 35.)  She stopped working in March of 2011 and has not worked since.  (*Id*.) Plaintiff last worked as a balancer for Wheaton Bank and Trust.  (R. 36.)  She testified that she had been doing accounting work since 1978.  (R. 37.)

In 2011, Plaintiff left her job because of her pain.  (R. 40.)  She had back surgery in 2011 and tried to return to work but found it difficult to resume her duties.  (R. 41.) She attempted to work full-time for three months but she began to have severe pains in her groin and knees.  (R. 41.)  The pain occurred around three times a day and was most severe at night.  (R. 42.)  Plaintiff also testified that she had surgery on her left shoulder which left her in pain and unable to use her left shoulder.  (R. 45.)  She also has trouble lifting her right arm because she experiences pain in her neck, shoulders, and back.  (R. 49.)  Plaintiff also testified that she has arthritis in her fingers.  (R. 50-51.) Specifically, her middle and index fingers on her right hand give her difficulty and she cannot bend them.  (R. 51.)  She further testified that her fingers cause her to drop items frequently.  (*Id*.)  Though she attended physical therapy, she has difficulty writing

with her right hand and weakness in her left hand causes her to drop items frequently. (*Id.*)

When asked about her average daily activities, Plaintiff stated that she is "very lazy" and that her husband does the majority of the work.  (R. 51.)  She cannot assist her husband with cooking because she frequently needs to sit or lie down.  (R. 52.)  She mostly assists her husband in the kitchen by instructing him or by stirring the food.  (R. 59.)  She does simple chores around the house, such as dusting.  (*Id.*)  She cannot do dishes because she frequently drops them.  (*Id.*)  When she goes grocery shopping, she needs to continuously lean on the shopping cart.  (R. 53.)  She cannot do laundry. Though she can drive a vehicle, she needs assistance closing and opening the door. (*Id.*)  She can walk a block but generally does not exercise.  (R. 54.)  Plaintiff testified that she sometimes requires assistance when dressing.  (R. 65.)  She can stand for about five minutes before her knees start to swell.  (*Id.*)  Plaintiff stated she has difficulty using a computer because she cannot stretch her arm out for a long time.  (R. 55.)

Plaintiff's attorney then questioned Plaintiff.  When asked to rate her pain on a scale from one to ten, ten being the most pain, she answered six or seven.  (R. 57.) She has pain all the time which affects her sleep.  She cannot sleep for more than two hours and cannot sleep on her left shoulder because it is tender.  (*Id.*)  She sleeps mostly on her right shoulder, which causes her pain in her hip and knee.  (*Id.*)  Plaintiff further testified that she is constantly tired and lies down frequently throughout the day. (R. 58.)  Plaintiff also had surgery in her knee to repair the meniscus.  (R. 62.)  Plaintiff testified that she had difficulty during the surgery which required two subsequent

surgical procedures to place and remove a stint. (R. 66-67.) She has to elevate her leg during the day to manage the pain. (R. 63.)

### D. Vocational Expert's Testimony

A VE was present to testify at Plaintiff's hearing. He determined that even though Plaintiff's former position was that of an accountant, which is considered a semi-skilled and sedentary position, her work was more in line with that of a bookkeeper. (R. 70.) The VE determined the position of bookkeeper to also be semi-skilled and sedentary. (*Id.*)

The ALJ then asked the VE whether an individual who is 59 years old, has a high school education, is capable of performing work at the sedentary exertional level but cannot climb ladders, ropes, or scaffolds, but could occasionally climb ramps stairs, can occasionally balance, stoop, kneel, crouch, crawl, but cannot perform overhead reaching, would be able to perform Plaintiff's past bookkeeping position. (R. 72.) The VE affirmed. (*Id.*) The ALJ then asked whether such an individual would be capable of performing the bookkeeping job if she was required to lift boxes up to the light level of physical tolerance. (*Id.*) The VE opined that it would preclude employment as a bookkeeper. (*Id.*)

Plaintiff's attorney then cross-examined the VE. (R. 73.) The VE opined that an employer would tolerate one and three-quarters absences per month, which was equal to 21 days in a year. (*Id.*) The attorney then asked how many breaks an employer would allow an employee to have throughout the day and the VE responded with three. (R. 74.) If an individual had to take an additional break during the morning in order to lie down and stretch, the VE stated this would exceed employer tolerances. (R. 74.) If the

individual were off task for an hour or an hour and a half during the afternoon, the VE testified that there would be no jobs available. (R. 75.)

## II.  LEGAL ANALYSIS

### A.  Standard of Review

Because the Appeals Council denied review, the ALJ's findings constitute the final decision of the agency. *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994). The findings of the ALJ as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g); *see also Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002); 42 U.S.C. § 1383 ("The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."). Although the court affords great deference to the ALJ's determination, it must do more than merely rubber stamp the ALJ's decision. *Griffith v. Sullivan*, 916 F.2d 715 (7th Cir. 1990) (citing *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986)). In order to affirm the ALJ's decision, the court must find the decision to be supported by substantial evidence on the record as a whole, and must take into account whatever in the record fairly detracts from its weight. *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951). Substantial evidence is more than a mere scintilla; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kepple v. Massanari,* 268 F.3d 513 (7th Cir. 2001) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The court may not displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations. *Skinner v. Astrue*, 478 F.3d 836, 841

(7th Cir. 2007).  Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that determination falls upon the ALJ, not the courts.  *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).  An ALJ must articulate her analysis by building an accurate and logical bridge from the evidence to her conclusions, so that the court may afford the claimant meaningful review of the ALJ's ultimate findings.  *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).  It is not enough that the record contains evidence to support the ALJ's decision and the court must remand if the ALJ does not rationally and sufficiently articulate the grounds for that decision, so as to prevent meaningful review.  (*Id.*)

### B.     Analysis under the Social Security Act

To qualify for Social Security benefits, a claimant must be under a disability within the meaning of the Social Security Act ("The Act").  42 U.S.C. § 423(a)(1)(E).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see also Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002).  Pursuant to the Act, a claimant is disabled only if his physical or mental impairments are of such severity that he is unable to do his previous work and cannot, when "considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. § 423(d)(2)(A).  Another agency requirement to

receive disability insurance benefits is that a claimant must show he was disabled on or before the date his insured status expired. *See* 20 C.F.R. § 404.130 for definition of disability insured status; *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).

Under the authority of the Act, the Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). This five-step sequential evaluation process requires the ALJ to make the following inquiries:

1.      Is the claimant presently engaging in substantial gainful activity ("SGA") as identified by 20 C.F.R. § 404.1572 *et seq.*?

2.      Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?

3.      Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations? *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

4.      Is the claimant unable to perform his or her former occupation?

5.      Is the claimant unable to perform any other work?

20 C.F.R. § 404.1520(a)(4); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). A negative answer at any point, other than step three, ends the inquiry and leads to a determination that a claimant is not disabled. *Zalewski v. Heckler*, 760 F.2d 160, 162 n. 2 (7th Cir. 1985). The claimant has the burden of establishing steps one through four. At step five the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

Here, the ALJ followed this five-step approach. As an initial matter, the ALJ determined that Plaintiff met the insured status requirements of the Act through December 31, 2015 and has not engaged in substantial gainful activity since her alleged onset date of March 10, 2011. (R. 12.) At step two, the ALJ determined that Plaintiff had the severe impairments of diabetes, hypertension, and degenerative joint disease of the shoulders, cervical and lumbar spine, post lumbar spine decompression, and trigger finger of the right ring finger.

At step three, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that meet or equal the severity of one of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. With regard to medical listing 1.04 addressing disorders of the spine, the ALJ found that examinations showed loss of range of motion for forward bending but not for motor strength. (R. 13.) The ALJ noted that the records do not show that Plaintiff experienced back pain due to a history of herniation, but rather due to a non-healing wound. (*Id.*) With regard to Plaintiff's back pain, the ALJ found that the x-rays of the cervical spine showed degenerative disc disease but that the condition has been treated conservatively. (*Id.*) With regard to medical listing 1.02 pertaining to joint dysfunction, the ALJ determined that Plaintiff's impairments do not meet or equal this listing because she is able to walk unassisted with normal gait, can go shopping, and garden. (R. 14.) Furthermore, the ALJ pointed to x-rays of her shoulder which showed no evidence of fracture or dislocation. (*Id.*) With regard to endocrine disorders under category 9.00 of the listings, the ALJ concluded that Plaintiff, though diagnosed with diabetes, has not experienced any complications due to her diabetes that would meet or equal the listing. (R. 15.)

At step four, the ALJ determined that Plaintiff has the RFC to perform sedentary work except she can only occasionally climb, balance, and stoop, kneel, crouch, or crawl and must avoid overhead reaching bilaterally. (R. 15.) The ALJ did not find Plaintiff's allegations of pain and ability to walk only one block to be credible. (R. 16.) The ALJ cited to physical therapy notes that showed Plaintiff was engaged in activities around the house and gardening. (*Id.*) The ALJ further stated that Plaintiff's allegations regarding her inability to work due to absenteeism, the inability to stay on task, and the need to elevate her leg did not prevent Plaintiff from performing the exertional demands of sedentary work. (R. 17.) The ALJ also found that the limitations that Dr. Houlihan imposed on Plaintiff's ability to work were unsupported by other physicians' reports, as well as Plaintiff's own statements of reported activities and pain levels. (*Id.*) Accordingly, she gave Dr. Houlihan's opinion minimal weight.

At the final step, the ALJ determined that Plaintiff can perform her past relevant work as a bookkeeper. (R. 18.) She found that the work required of the position does not require the performance of work-related activities precluded by Plaintiff's RFC. (Id.) The VE described the position as semiskilled and of sedentary exertional demand. During the hearing, the VE further determined, based upon the ALJ's hypothetical questions, that an individual with Plaintiff's RFC could perform the bookkeeping job per the description of duties offered by the DOT but not as Plaintiff performed the job. (R. 18.)

III.    DISCUSSION

Plaintiff now argues that the ALJ erred in rendering her decision and presents four issues for the court to consider: 1) whether the ALJ erred in rendering her step-

three determination; 2) whether the ALJ's residual functional capacity ("RFC") determination was erroneous; 3) whether the ALJ's credibility determination was patently wrong; and 4) whether the ALJ erred in rendering her "step five" determination.

### A. The Step Three Determination

Though Plaintiff proffers several reasons for why the ALJ rendered an erroneous step three determination, they can be condensed into one argument, and that is that the ALJ failed to undertake an equivalence inquiry with regard to Plaintiff's obesity. Plaintiff argues that the ALJ offered no support for her assertion that Plaintiff's obesity, in combination with other impairments like her left knee pathology, did not equal a listed impairment.

Although obesity was removed from the listing of impairments, agency regulations still permit an ALJ to equate obesity, alone or with other impairments, with a listed impairment. *See* SSR 02-1P (S.S.A.) 2002 WL 34686281. Where an individual claims obesity as an impairment, the ALJ must "consider the effects of obesity together with the underlying impairments." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). An ALJ should evaluate the effect of a claimant's obesity with reference to a listed impairment and should not make assumptions about the severity or functional effects of obesity. *Hilmes v. Barnhart*, 118 F. App'x 56, 59 (7th Cir. 2004).

Here, the ALJ found that Plaintiff, at five foot and weighing 207 pounds with a BMI of 40.58, was obese. *See* SSR 02-1P (S.S.A.) 2002 WL 34686281 at *2. The ALJ went on to state, "the undersigned has considered the effect of obesity on the claimant's severe impairments and finds that obesity compounds the symptoms of her other conditions," but concluded that Plaintiff's impairments do not satisfy the criteria either by

matching or equaling a listing impairment. (R. 15.) The ALJ did not provide any further analysis and did not support her determination with objective or subjective evidence. This is unlike *Hilmes*, where the ALJ observed the plaintiff's demeanor at the hearing and reviewed the plaintiff's medical evidence to conclude that though obese, the plaintiff walked with only a slight limp. This case can also be distinguished from *Castile v. Astrue*, 617 F.3d 923, 928 (7th Cir. 2010), where the ALJ explicitly noted that claimant was obese but found that the objective evidence, such as the medical records and consultative examinations, did not list any disabling functional limitations despite the plaintiff's weight. Without further assessment, the ALJ's cursory finding here is deficient and she failed to build a logical bridge from the evidence to her conclusion. *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Perhaps more concerning is that the ALJ acknowledged that "obesity commonly leads to and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems," (R. 15), but failed to consider the effect of Plaintiff's weight on her existing respiratory and musculoskeletal impairments, such as her degenerative disc disease of the cervical and lumbar spine, her asthma, and her diabetes. *See Clifford*, 227 F.3d at 873 (finding that plaintiff suffered from severe arthritis of the knees and high blood pressure which were significantly related to obesity under Listing 9.09, 20 C.F.R. Part 404, Subpart P, Appendix 1); *Celaya v. Halter*, 332 F.3d 1177, 1182 (9th Cir. 2003) (given the potential effect of obesity on plaintiff's diabetes and hypertension, the ALJ had a responsibility to consider their interactive effect). While Plaintiff's obesity may not equal a listing impairment independently, the ALJ was responsible for determining the effect of Plaintiff's obesity upon her other

impairments, and its effect on her ability to work and on her general health, given the presence of those impairments. "In determining whether a claimant equals a listing under step three, the ALJ must explain adequately her evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (1990); *see also* SSR 83-19 (S.S.A.), 1983 WL 31248, at *2. The court recognizes that the Seventh Circuit has held that a failure to explicitly consider the effects of obesity may be harmless error. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (the ALJ did not address the claimant's obesity but did adopt the limitations suggested by specialists and reviewing doctors who were aware of the condition). However, this case can be distinguished from *Skarbek* and the court is not convinced the error is harmless. Here, the ALJ did not adopt the opinions of Plaintiff's treating physicians regarding her obesity and did not address the limitations that her weight may impose in combination with her other impairments. Her omission of any significant discussion regarding Plaintiff's obesity at step three ignores the requirements of SSR 02-1P and requires remand.

### B.    The RFC Determination

Plaintiff next argues that the ALJ erred when determining her RFC, by failing to consider Plaintiff's obesity, which then affected the ALJ's subsequent findings. The ALJ determined that Plaintiff had the RFC to perform sedentary work but was limited to occasional climbing, balancing, stooping, kneeling, crouching, or crawling and she must avoid overhead reaching bilaterally.

The RFC is the maximum that a claimant can still do despite his mental and physical limitations. *Pepper*, 712 F.3d at 362; 20 C.F.R. § 404.1545(a)(1). It is based

upon the medical evidence in the record and other evidence, such as testimony by the claimant or his friends and family. *See* 20 C.F.R. § 404.1545(a)(3). When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered severe. *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008); *Id.* at §§ 404.1545(a)(2), (b), (c). Plaintiff again contends that the ALJ improperly analyzed her combination of impairments by neglecting the issue of her weight and the court agrees. The ALJ's brief mention of Plaintiff's obesity does not impart confidence that the RFC determination truly represented the "maximum that a claimant can still do despite his mental and physical limitations." *Pepper*, 712 F.3d at 362.

Furthermore, the ALJ made no attempt to explain why the other evidence in the record which appears to favor Plaintiff was overcome by the evidence on which she relied. For example, the ALJ stated that she gave great weight to the opinion of the agency physicians "as these opinions are consistent with objective medical evidence." But she does not cite to the objective medical evidence to which she referenced and does nothing to address the agency physicians' finding that Plaintiff indeed has exertional limitations, such as being limited to occasionally lifting up to 20 pounds, frequently lifting up to 10 pounds, standing for a total of two hours, and sitting for about six hours in an eight-hour workday. In addition, the ALJ acknowledged Plaintiff's inability to use her hand due to surgery and that she is only able to lift her left arm to shoulder level despite a plethora of cortisone injections and physical therapy sessions. But then the ALJ rejected Plaintiff's allegations regarding difficulties with her hands and fingers by finding them unsupported by medical evidence. She cited to medical records

from August 2011 that showed Plaintiff "did well" after surgery but this explanation is unpersuasive as the same medical records also show that Plaintiff could not fully flex her fingers and complained of recurring pain in both of her shoulders a few months later. (R. 1118.) While an ALJ need not address every piece of evidence or testimony in the record, the analysis must provide some glimpse into the reasoning behind her decision. *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009). In this case, the ALJ's decision simply fails to permit an informed review, therefore a remand for a redetermination of Plaintiff's RFC is necessary.

Furthermore, the ALJ concluded that Plaintiff could perform a full range of sedentary work because she went grocery shopping, sat at the hearing for 30 minutes without needing to stand, and did "a lot of gardening and things around the house." (R. 16.) But limited daily activities such as Plaintiff's do not contradict a claim of disabling or limiting pain, *see Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001); *Clifford*, 227 F.3d at 872, and the Plaintiff also testified that she had to lean on the shopping cart, continuously dropped dishes around the house because she cannot carry items in her hands, and could only walk for one block before experiencing pain. Additionally, the Seventh Circuit has cautioned ALJs against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home. *See Craft*, 539 F.3d at 680 (*citing Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006)). In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments and may not dismiss a line of evidence contrary to the ruling. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). Because the ALJ failed to

do so here, remand is required for further evaluation of Plaintiff's capabilities and limitations.

### C.    The Credibility Determination

Next, Plaintiff argues that the ALJ's credibility determination was erroneous and requires remand.  Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness, the court will not overturn an ALJ's credibility determination unless it is patently wrong.  *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012).  But a court has greater freedom to review credibility determinations when they are based on objective factors rather than subjective observations.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 354 (7th Cir. 2005).  When evaluating credibility, the ALJ must consider the entire case record and give specific reasons for the weight given to the individual's statements.  *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009).

Plaintiff first faults the ALJ for using boilerplate language often criticized by the Seventh Circuit as being opaque, meaningless, and unsustainable.  *See Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012).  But the use of the boilerplate alone does not render the credibility determination patently wrong and the Seventh Circuit has also noted that an ALJ's use of this template is harmless if the ALJ provides additional reasons for her finding.  *See Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012).  Here, although the ALJ provided several reasons for finding Plaintiff's allegations and statements of pain incredible, plaintiff points to deficiencies in those reasons.

First, the ALJ inappropriately rested her credibility determination on Plaintiff's daily activities without finding further support from the medical records.  With regard to Plaintiff's inability to walk, the ALJ stated that the limitation was not supported by

objective medical evidence and her activities of daily living, such as grocery shopping, "demonstrates the ability to do the walking and standing required to perform sedentary work activity." (R. 16.) Though the ALJ may consider a claimant's daily activities when assessing credibility, *see Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007), she must explain perceived inconsistencies between Plaintiff's activities and the medical evidence. *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009). Here, the ALJ goes no further to explain her perceived inconsistency. Even though she determined that Plaintiff's inability to walk was unsupported by medical evidence, she does not state or analyze the evidence that contradicted Plaintiff's testimony. *See* SSR 96–7p, 1996 WL 374186, at *4 (The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that the individual's allegations have been considered or that the allegations are (or are not) credible.); *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (the ALJ must explain her decision in such a way that allows us to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record).

The ALJ later cites to Plaintiff's physical therapy reports that found that she could do "a lot of gardening and things around the house," but the cited record does not speak to Plaintiff's inability to walk and stand. Rather, her physical therapy was centered on a damaged rotator cuff. Even still, the physical therapy records contain numerous assessments documenting Plaintiff's recurring pain and limited movement, (R. 1207, 1211, 1223, 1236, 1253), indicating that the ALJ impermissibly cherry-picked facts that

supported her findings and did not fulfill her obligation to consider all relevant medical evidence. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)).

The ALJ's credibility determination was also flawed for other reasons. First, she inferred that Plaintiff was not credible because medical evidence showed she was not a candidate for knee arthroscopy in 2011, even though her physician told her she would require a knee replacement. The conflicting opinions of Plaintiff's treating sources should not bear upon Plaintiff's own credibility and a complete credibility analysis must account for Plaintiff's own allegations. 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, 1996 WL 374186; *Eakin v. Astrue*, 432 F. App'x 607, 613 (7th Cir. 2011). Here, the ALJ erroneously relied upon the conflicting opinions of Plaintiff's treating sources to discredit Plaintiff's own testimony. Furthermore, the ALJ focused on the lack of treatment on Plaintiff's knee but disregarded the plethora of procedures that were subsequent to the knee diagnosis. On August 17, 2011, Plaintiff had a right ring finger pulley release surgical procedure performed at Central DuPage Hospital. (R. 1023, 1144.). In September 2011, Plaintiff was admitted for abdominal pain and diagnosed with a gangrene gallbladder with biliary leak. (R. 987.) Surgery was performed with difficulty. (R. 1002.) In March 20, 2012, an MRI indicated a tear in the rotator cuff and Plaintiff had surgery on March 28, 2012 for a torn rotator cuff. (R. 1101.) Although the ALJ need not discuss every piece of evidence in the record, he must confront the evidence that does not support her conclusion and explain why it was rejected. *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). The ALJ's credibility determination is therefore insufficient because of her failure to address the entire case record.

The Commissioner tries to bolster the ALJ's limited analysis by arguing that in *Jens v. Barnhart,* 347 F.3d 209, 213 (7th Cir. 2003), the Seventh Circuit held that an ALJ's omission in providing an evidentiary basis for her credibility finding and a failure to specify which of the plaintiff's statements were credible and incredible did not render the credibility finding unsupported by medical evidence. However, the instant case can be distinguished from *Jens.* In that case, the record provided adequate support for the ALJ's credibility finding, such as the physician's report that the plaintiff's pain was out of proportion to his laboratory findings; the plaintiff's lack of complaints of an inability to concentrate; plaintiff's testimony that he was able to watch television and read for six hours a day; and the plaintiff's treating physician conclusion that he was capable of working forty hours a week. (*Id.* at 213-14.)

Here, the ALJ did not point to objective or subjective evidence in the record to support her credibility findings. Though the ALJ consistently referred to medical evidence that conflicted with Plaintiff's testimony in her decision, the ALJ did not point to the conflicting evidence in the record and did not offer any explanation as to how the evidence supported her conclusions. Because the ALJ failed to consider the entire case record and give specific reasons for her determination, remand is required. *See Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015); *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (An ALJ still must competently explain an adverse-credibility finding with specific reasons supported by the record.) On remand, the ALJ must first consider all the evidence in the record before making a credibility determination.

### D.    The "Step Five" Determination

Finally, Plaintiff argues that the ALJ's step five analysis is flawed because she failed to consider all of Plaintiff's limitations. As the Commissioner points out, Plaintiff misidentifies her argument as a step five issue because the ALJ only reached step four, when she determined claimant could perform her past relevant work. In any event, the court need not address Plaintiff's remaining argument because the case is being remanded for a new credibility and RFC assessment. Any changes that result from those new assessments will necessarily require a new analysis at subsequent steps. Of course, on remand, the ALJ must consider Plaintiff's RFC, age, education, and work experience, as well as whether the Plaintiff can make an adjustment to her past relevant work or other work in the national economy. The ALJ should take care to address how Plaintiff's impairments, specifically her limitations in her finger, would impact her ability to perform her past work as a bookkeeper.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and the case is remanded to the Social Security Administration for further proceedings consistent with this Opinion. The Commissioner's motion for summary judgment is denied. It is so ordered.

ENTERED:

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated:** February 1, 2016

23